1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8    KIPOUNG SOMSANUK,

9                            Petitioner,

10         v.

11    PAMELA BONDI, *et al.*,

12                            Respondents.

13

Case No. C26-48-MLP

ORDER GRANTING HABEAS
PETITION

14                    **I.    INTRODUCTION**

15         This matter is before the Court on the petition for a writ of habeas corpus filed, through

16    counsel, by Petitioner Kipoung Somsanuk. (Dkt. # 1.) Petitioner asks the Court to: (1) order his

17    immediate release from immigration custody; (2) prohibit Respondents from redetaining him in

18    the future without first providing a hearing before a neutral decisionmaker; and (3) bar

19    Respondents from removing him to any third country. (*Id.* at 25-26.) The Court has considered

20    the petition, the briefing submitted by both sides, and the remainder of the record. For the

21    reasons set forth below, the Court GRANTS the petition in part.[1]

22

23

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 4.)

ORDER GRANTING HABEAS PETITION - 1

1

## II.   BACKGROUND

2          Petitioner states that he "was informed that he was born in Laos[.]" (Dkt. # 1 at 5.)

3     Respondents describe him as a "native and citizen of Laos who entered the United States in

4     1991." (Dkt. # 9 at 1.) Petitioner, however, asserts "there is no indication that he is a citizen of

5     [Laos]." (Dkt. # 1 at 6.) He was "[a]dmitted as a[n] Indochinese Refugee [at] San Francisco, CA

6     on 11-19-91 at the age of nine years" with grandparents who had adopted him. (Dkt. # 11-4 at 2.)

7          In 2003, in his early adulthood, Petitioner was convicted in state court of rape in the third

8     degree and sodomy in the third degree. (Dkt. ## 11-1 at 1; 11-2 at 4.) Based on these convictions,

9     Petitioner was placed in deportation proceedings, and on October 27, 2003, an Immigration

10    Judge ordered Petitioner removed to Laos. (Dkt. ## 11-1 at 2; 11-3 at 2.) The parties agree that

11    this removal order is administratively final. (Dkt. ## 1 at 4; 9 at 1.)

12         Petitioner was held in immigration detention from October 20, 2003, to April 20, 2004, a

13    period of about six months. (Dkt. ## 11-1 at 2; 11-2 at 3; 14 at 4.) He was then released on an

14    Order of Supervision ("OSUP") because the government was unable to remove him to Laos. A

15    contemporaneous memorandum explains:

16              Based upon the refusal of the Laos Consulate to recognize Kipuong as a
               citizen and issue a travel document and the fact that the United States has
17              no repatriation agreement with Laos, removal is not imminent at this time.
               Kipuong does not meet the criteria for continued detention established
18              under Zadvydas v. Davis; immediate release with appropriate conditions is
               recommended.
19
      (Dkt. # 11-4 at 6.)
20
           While on supervision between 2003 and 2025, Petitioner violated the conditions of his
21
      release on several occasions and was convicted of additional crimes. (Dkt. # 9 at 2.) In 2007, he
22
      was again convicted of rape in Oregon state court. (*Id.*) In 2020, he was convicted in federal
23
      court of being a felon in possession of a firearm. (*Id.*) He was also convicted of failing to register

ORDER GRANTING HABEAS PETITION - 2

1    as a sex offender and of driving under the influence. (*Id.*) In 2023, he was convicted of probation

2    violations. (*Id.*) Despite these violations, the record reflects that Petitioner remained on

3    immigration supervision for more than two years after his October 19, 2023 probation violation.

4    (Dkt. ## 10, ¶¶ 10-11; 14 at 12.)

5        On December 12, 2025, without any new arrest, violation, or other identifiable triggering

6    event, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner back into custody.

7    On that date, the Office of Enforcement and Removal Operations, a component of ICE, revoked

8    his OSUP based on a "determination that there are changed circumstances in [his] case," citing

9    the 2003 removal order and his 2020 federal firearm conviction. (Dkt. # 11-8 at 2.) Petitioner has

10   remained detained at the Northwest ICE Processing Center ("NWIPC") since that time. (Dkt.

11   ## 1 at 4; 9 at 1.)

12       The record contains no concrete information as to if or when a travel document for

13   Petitioner might issue. Respondents rely on the declaration of ICE Deportation Officer Anthony

14   Rosa to argue that removal is reasonably foreseeable. Officer Rosa states only that "DHS has

15   initiated the process of requesting that the government of Laos issue the Petitioner a Laotian

16   travel document." (Dkt. # 10, ¶ 12.) He does not affirm that his declaration is true and correct,

17   and he does not state that it is made under penalty of perjury. The Court therefore does not credit

18   his statements. *See Wana v. Bondi*, 2025 WL 3628634, at *4 (W.D. Wash. Dec. 15, 2025)

19   (declining to consider a declaration that was neither sworn true nor made under penalty of

20   perjury). In any event, even if accepted as true, Officer Rosa's brief statement offers no specifics

21   regarding any request to Laos, any response by Laos, or any timeline for travel documents, and

22   thus does not show that Petitioner's removal is reasonably foreseeable.

23

ORDER GRANTING HABEAS PETITION - 3

### III.    LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### IV.    DISCUSSION

Petitioner advances five grounds for habeas relief: (1) that his continued detention violates the Fifth Amendment because it has become indefinite; (2) that his redetention violates procedural due process because he received no hearing; (3) that ICE violated its own regulations by redetaining him without prior notice or an opportunity to be heard; (4) that prospective third-country removal would violate the Fifth Amendment, the Convention Against Torture and its implementing regulations, and the Administrative Procedure Act; and (5) that prospective third-country removal would violate the Fifth and Eighth Amendments. (Dkt. # 1 at 19-25.) Respondents contend that Petitioner's current detention complies with substantive and procedural due process, that ICE followed its regulations, that any third-country removal claim is not ripe for review, and that Petitioner's detention is authorized by statute. (Dkt. # 9 at 2.)

#### A.    Indefinite Detention

When a final order of removal is entered, the noncitizen enters a ninety-day "removal period." 8 U.S.C. § 1231(a)(1). During this period, the statute mandates detention. 8 U.S.C. § 1231(a)(2)(A). After the removal period expires, the government may continue to detain

ORDER GRANTING HABEAS PETITION - 4

1  certain noncitizens, including those removable because of criminal convictions, or may release

2  them under supervision. 8 U.S.C. § 1231(a)(6); *see also Zadvydas*, 533 U.S at 683.

3  Section 1231(a)(6) does not, however, authorize open-ended detention. In *Zadvydas*, the

4  Supreme Court construed the statute to allow detention only for a period reasonably necessary to

5  secure removal and held that it does not permit "indefinite" detention. 533 U.S. at 701. The

6  Court established a three-step framework:

7      (1) Post-removal-order detention is "presumptively reasonable" for six months.

8      (2) After six months, if the noncitizen "provides good reason to believe that there is no

9          significant likelihood of removal in the reasonably foreseeable future," the burden shifts

10          to the government to "respond with evidence sufficient to rebut that showing."

11      (3) If the government cannot rebut the showing, the petitioner is entitled to habeas relief.

12  *Zadvydas*, 533 U.S at 701. The six-month period is not a rigid cutoff. Detention may extend

13  beyond six months if removal remains likely within a reasonably foreseeable time. *Id.* At the

14  same time, "for detention to remain reasonable, as the period of prior postremoval confinement

15  grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

16  Applying this framework, the Court concludes that Petitioner is entitled to habeas relief.

17  First, it is undisputed that his total post-removal order detention now exceeds six months.

18  Detention need not be continuous for purposes of the *Zadvydas* clock. "[W]here a petitioner has

19  been detained and released by ICE multiple times after a final order of removal, 'the clock'

20  on *Zadvydas's* six-month period of presumptive reasonability does not re-start with each

21  successive detention." *Abubaka v. Bondi*, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17,

22  2025); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting the

23  government's argument that the detention period must be consecutive).

ORDER GRANTING HABEAS PETITION - 5

1   Petitioner was detained for approximately six months from October 2003 to April 2004

2   and has now been detained for more than one additional month following his redetention in

3   December 2025. (Dkt. # 14 at 4.) His aggregate post-removal order detention therefore exceeds

4   the six-month presumption.

5   Second, Petitioner has provided good reason to believe that there is no significant

6   likelihood of removal in the reasonably foreseeable future. The record shows that:

7   (1) ICE has been unable to remove Petitioner to Laos for more than twenty years since the

8   removal order was entered (dkt. # 11-3 at 2);

9   (2) After ICE requested travel documents in 2003, Petitioner was released on supervision

10   because the Laos Consulate refused to recognize him as a citizen and because the United

11   States has no repatriation agreement with Laos (dkt. # 11-4 at 6); and

12   (3) Petitioner asserts, and Respondents do not rebut with any documentation, that there is no

13   indication he is in fact a Laos citizen and that he has no meaningful connection to that

14   country (dkt. # 1 at 6).

15   Taken together, these facts satisfy Petitioner's initial burden under *Zadvydas*. The burden

16   therefore shifts to the government to come forward with concrete evidence that his removal is

17   significantly likely in the reasonably foreseeable future. 553 U.S. at 701.

18   The government has not met that burden. Respondents point only to Officer Rosa's

19   unsworn declaration and their own statements that the government has "initiated the process" of

20   requesting travel documents from Laos. (Dkt. # 9 at 7, 13-14; *see also* dkt. # 10, ¶ 12.) They do

21   not state that Laos has agreed to issue documents, that Laos has changed its prior position, or that

22   any repatriation arrangement now exists where none existed before. They do not even clearly

23

ORDER GRANTING HABEAS PETITION - 6

1  state that a formal request has been transmitted to Laos, as opposed to an internal step toward

2  making such a request.

3          As other courts have recognized, "general indications that U.S. agencies have been in

4  discussions with [the target country] regarding repatriation efforts do not indicate that those

5  discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts

6  will be successful." *Zhao v. Kelly*, 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017). That

7  reasoning applies with equal force here.

8          Respondents also do not address Petitioner's core points: that Laos has already refused to

9  recognize him as a citizen; that there is no repatriation agreement between the United States and

10  Laos; that these circumstances prevented his removal during more than six months of prior

11  detention; and that there is no new factual development showing that these obstacles have now

12  been overcome. "ICE is not permitted to hold [Petitioner] indefinitely while it waits for travel

13  documents from [Laos]." *Tran v. Bondi*, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025).

14          On this record, the government has not obtained travel documents for Petitioner, has not

15  shown that it has actually submitted a viable request to Laos, does not know when such

16  documents might issue, and does not know if they will issue at all. Under *Zadvydas*, that is

17  insufficient to justify continued detention. Petitioner is thus entitled to immediate release.[2]

18      **B.    Additional Relief**

19          Federal courts have authority to resolve habeas matters "as law and justice require." 28

20  U.S.C. § 2243. This provision "does not limit the relief that may be granted to discharge of the

21  applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). District courts

22

23

---

[2] Because the Court finds Petitioner's detention is indefinite under *Zadvydas*, and thus affords relief on that basis, it does not reach Petitioner's alternative grounds for release.

ORDER GRANTING HABEAS PETITION - 7

1  instead "enjoy 'broad' discretion in fashioning remedies for habeas relief." *Johnson v. Uribe*,

2  700 F.3d 413, 425 (9th Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

3                    *1.     Future Redetention*

4         Petitioner asks the Court to prohibit his future redetention unless specific conditions are

5  met, including advance notice, a hearing before a neutral decisionmaker, and the existence of a

6  valid travel document to Laos. (Dkt. # 1 at 22-23, 25-26.) Respondents do not address this

7  request and have therefore waived any argument against such relief.

8         Petitioner contends that "there is a significant likelihood that Respondents would seek to

9  again re-detain Petitioner unlawfully. Respondents have a policy to round up as many

10  noncitizens as possible." (Dkt. # 1 at 21.) He cites a news report describing aggressive national

11  enforcement targets. (*Id.*)

12         The Court finds that prospective relief governing any future redetention is warranted.

13  Petitioner falls within a group that ICE has treated as a priority for enforcement: noncitizens with

14  prior criminal convictions. *Phuc Huu Nguyen v. Bondi*, 2026 WL 183819, at *6 (W.D. Wash. Jan

15  23, 2026) (noting that "noncitizens with past criminal convictions" are a target group for

16  immigration arrests). Respondents have already redetained him once without a hearing and

17  without a realistic prospect of removal in the reasonably foreseeable future. They provide no

18  assurance that they will refrain from redetaining him again under similar circumstances.

19         Moreover, the right Petitioner seeks to protect is a pre-deprivation right to a hearing.

20  "[H]e can enforce that right only by bringing a challenge now, prior to being re-arrested." *Ortega

21  v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Without prospective relief, the unlawful

22  pattern that gave rise to this case could recur.

23

ORDER GRANTING HABEAS PETITION - 8

1    In these circumstances, and consistent with the Court's broad remedial authority in

2  habeas, the Court will prohibit Respondents from redetaining Petitioner absent advance notice,

3  an opportunity to be heard, and the existence of a valid travel document, as described more fully

4  in the conclusion of this Order. Similar prospective relief has been granted in other cases in this

5  District. *See*, *e.g.*, *Tzafir v. Bondi*, 2026 WL 74088, at *5 (W.D. Wash. Jan. 9, 2026); *Yuksek v.*

6  *Bondi*, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026); *Wana*, 2025 WL 3628634, at *6; *Do v.*

7  *Scott*, 2025 WL 3496909, at *4 (W.D. Wash. Dec. 5, 2025).

8               2.        *Third-Country Removal*

9    Petitioner also seeks an order prohibiting his removal to any third country unless he

10  receives notice and a meaningful opportunity to respond in reopened removal proceedings. (Dkt.

11  # 1 at 22-26.) Respondents argue that this claim is not ripe because "[a]t this time, ICE has no

12  intention of removing Petitioner to a third country other than Laos." (Dkt. # 9 at 14.)

13    The Court concludes that the issue is ripe. Petitioner is within a priority enforcement

14  category, yet it remains uncertain whether the government can obtain travel documents from

15  Laos. *See Phuc Huu Nguyen*, 2026 WL 183819, at *6. This combination creates a real and

16  immediate risk that Respondents will seek to remove him to a third country if Laos continues to

17  refuse to issue documents. Respondents' qualified statement that "at this time" they have no such

18  intention does not bind them in the future and provides no assurance against sudden

19  third-country removal efforts.

20    In addition, a July 9, 2025 internal ICE memorandum describes agency procedures for

21  third-country removals. (Dkt. # 1-1 at 2.) The memorandum indicates that where ICE obtains

22  diplomatic assurances, it may remove a noncitizen to a third country "without the need for

23  further procedures," and that in "exigent circumstances" ICE may effect such a removal in as

little as six hours. (*Id.*) As other courts have found, these procedures create a substantial risk that noncitizens will be removed to third countries before they can meaningfully assert withholding or protection claims. *See Nguyen*, 796 F. Supp. 3d at 728; *Wana*, 2025 WL 3628634, at *5.

On this record, there is an imminent risk that, if Laos continues to refuse travel documents, ICE may seek to remove Petitioner to an alternate country under this memorandum in a manner that does not comply with due process or statutory requirements.

The merits analysis follows established law in this District. "A noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). Due process "includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Id.* at 1010. Both due process and the relevant statutes place the burden on the government to provide a meaningful opportunity to assert asylum and withholding claims before removal to a newly designated country, whether that country is designated during the initial hearing or later. *Id.* These requirements "flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country." *Nguyen*, 796 F. Supp. 3d at 727. *Nguyen* held that ICE's July 9, 2025 memorandum "contravenes Ninth Circuit law" because it authorizes removal to a third country without adequate notice and an opportunity to be heard. *Id.* at 728.

Consistent with these cases, the Court will grant Petitioner prospective relief that requires notice and a meaningful opportunity to seek protection in reopened proceedings before any attempt to remove him to a third country. This relief ensures that ICE's current third-country

removal practices are not implemented in a manner that violates Petitioner's due process and statutory rights.

Petitioner further asks the Court to categorically prohibit his removal to any third country on the ground that Respondents' third-country removal program is unconstitutionally punitive in all applications. (Dkt. # 1 at 26.) On the present record, the Court declines to make such a broad ruling. The injunction requiring notice and a meaningful opportunity to be heard will allow Petitioner to challenge any particular proposed third-country removal where he can show a risk of imprisonment or other serious harm, and nothing in this Order prevents him from pursuing additional relief if warranted by future events.

## V.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus (dkt. # 1) is GRANTED in part;

(2) Respondents shall immediately release Petitioner from immigration custody, subject to appropriate conditions of supervision consistent with existing statutory and regulatory authority;

(3) Within **two (2) business days**, Respondents shall file a notice with the Court confirming his release;

(4) Respondents are prohibited from redetaining Petitioner under § 1231(a)(6) absent:

    a. A showing of meaningfully changed circumstances, such as the government's receipt of a valid travel document for Petitioner to Laos or a material violation of the terms of an OSUP; and

    b. Notice to Petitioner and an opportunity to be heard before a neutral decisionmaker regarding the basis for redetention;

1  (5) Respondents are prohibited from removing or attempting to remove Petitioner to any

2      country other than Laos without:

3          a.  Providing Petitioner and his counsel, if any, at least **ten (10) days'** written notice

4              identifying the proposed country of removal; and

5          b.  Affording Petitioner a meaningful opportunity to be heard in reopened removal

6              proceedings before an immigration judge, including the opportunity to seek any

7              available protection or relief.

8      Dated this <u>28th</u> day of January, 2026.

9

10     MICHELLE L. PETERSON
       United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER GRANTING HABEAS PETITION - 12